JAMES J. CERGET and STACY K. CERGET,

               Plaintiffs,                     Case Number: 08-11461

v.

DEUTSCHE BANK TRUST COMPANY         VIRGINIA M. MORGAN
AMERICAS, a Foreign Profit Corporation and    UNITED STATES MAGISTRATE JUDGE
SAXON MORTGAGES SERVICES, INC., a
Foreign Profit Corporation,

               Defendants.

_____ /

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 19)

In this civil action, Plaintiffs James and Stacy Cerget ("Plaintiffs") allege that Defendants

Deutsche Bank Trust Company Americas and Saxon Mortgages Services, Inc. ("Defendants")

unlawfully increased Plaintiffs' mortgage payment, assessed excess fees, penalties, and charges, and

illegally foreclosed upon Plaintiffs' property. Presently before the court is Defendants' motion for

summary judgment, filed June 22, 2009. (Doc. No. 19). Plaintiffs did not file a response. in

accordance with Local Rule 7.1(e)(2), the court dispensed with oral argument. (Doc. No. 21). For

the reasons stated below, the court **GRANTS** Defendants' motion, and dismisses Plaintiffs'

complaint with prejudice.

## I. Background

On November 28, 2001, Plaintiffs executed a thirty-year, adjustable rate mortgage with

Franklin Mortgage Funding for a home in Utica, Michigan. (Doc. No. 19, Defs.' MSJ, Ex. 3,

Mortgage). The initial interest rate on the loan was 11.5%, and Plaintiffs' initial monthly payment was $2,592.59. (Doc. No. 19, Defs.' MSJ, Ex. 1, Adjustable Rate Note ¶¶ 2-3). The loan documents specify that the Plaintiffs' interest rate could change on December 1, 2003, "and on that day every sixth month thereafter." (*Id.* at ¶ 4(A)). After December 1, 2003, the interest rate was to be based on an index of the "average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the *Wall Street Journal*." (*Id.* at ¶ 4(B)). The interest rate could never rise above 18.5%. (*Id.* at ¶ 4(D)). In the event that Plaintiff failed to make timely payments, a late charge of 5% of the overdue payment of principal and interest would be assessed. (*Id.* at ¶ 7(A)). The mortgage also allowed the Lender to require Plaintiffs to escrow tax and insurance payments, in the event that Plaintiffs failed to independently make the payments directly. (No. 19, Defs.' MSJ, Ex. 3, Mortgage § 3).

On September 30, 2005, after Plaintiffs had failed to pay their property taxes in 2004, an escrow account was established by the Lender, thereby increasing Plaintiffs' monthly payment. (Doc. No. 19, Defs.' MSJ Ex. 9, Stacy Cerget Dep. 41, 43, 46). Also, Plaintiffs made late payments and were assessed late charges. (*Id.* at 32). By November 2005, Plaintiffs' interest rate was 15% and was set to increase to 16%. (*Id.* at 23-24). At some point thereafter, Plaintiffs defaulted on their mortgage. (*Id.* at 26).

The mortgage was assigned to Defendants on January 13, 2006. (Doc. No. 19, Defs.' MSJ Ex. 4, Assignment of Mortgage). It is unclear from the evidence provided whether the mortgage assignment took place before or after Plaintiffs defaulted on their mortgage.

A notice of foreclosure was placed in the Macomb County Legal News on August 21, 2007, August 28, 2007, September 4, 2007, and September 11, 2007. (Doc. No. 19, Defs.' MSJ Ex. 6,

Foreclosure Notice).  The foreclosure notice was also affixed to Plaintiffs' home on August 31, 2007.  (*Id.*)

On September 21, 2007, the Macomb County Sheriff conducted a sheriff's sale of Plaintiffs' home and Defendants bought the property.  (Doc. No. 19, Defs.' MSJ Ex. 7, Sheriff's Deed on Mortgage Sale).

On March 20, 2008, Plaintiffs filed the instant lawsuit in Macomb County Circuit Court. (Doc. No. 1, Notice of Removal Ex. A., Verified Complaint [hereinafter "Compl."]).  In the complaint, Plaintiffs accused Saxon of improperly raising the interest rate on the mortgage, "assessing excessive late fees and charges not allowed by the mortgage contract," and illegally instituting an escrow account for tax payments that were not yet due.  (Compl. ¶¶ 9-12).  Plaintiffs also alleged that Deutsche Bank of lacked standing to initiate foreclosure proceedings.  (Compl. ¶ 23). Plaintiffs brought the following claims against Defendants: fraudulent misrepresentation, conversion, breach of contract, violation of the foreclosure by advertisement statute,  Mich. Comp. Laws § 600.3212, and civil conspiracy.  (Compl.).  Plaintiffs sought injunctive relief, declaratory relief, and monetary damages.  (Compl.).

On April 4, 2008, Defendants removed Plaintiffs' complaint to this court.  (Doc. No. 1, Notice of Removal).

Pursuant to 28 U.S.C. §36(c) and Fed. R. Civ. P. 73, the parties consented to this court's jurisdiction, thereby allowing the Honorable Virginia M. Morgan, United States Magistrate Judge, to conduct any further proceedings in the case, including trial, order the entry of a final judgment, and conduct all post-judgment proceedings.  (Doc. No. 4).

Defendants filed the instant motion for summary judgment on June 22, 2009.  (Doc. No. 19).

Plaintiffs have not filed a response, and the response time has long expired. (Doc. No. 21). The court, therefore, finds that Defendants' motion is ripe for adjudication.

## II. Standard of Review

The United States Court of Appeals for the Sixth Circuit has summarized the standard for summary judgment as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

## III. Analysis

Defendants first argue that they are entitled to summary judgment because there is no factual support for Plaintiffs' claims. (Doc. No. 19, Defs.' MSJ 15). Defendants assert that the loan documents allowed them to increase the interest rate, impose late fees, and require escrow payments, and Defendants took these actions in accordance with the contract. (*Id.*)

Plaintiffs allege in their complaint that Saxon "intentionally made false representations of material facts by sending out false statements with excessive charges, interest rates, and excessive escrow amounts which forced Plaintiffs into foreclosure." (Compl. ¶ 6). Plaintiffs further allege that Defendants breached the mortgage contract by "assess[ing] excessive interest rate charges beyond the contractual amount allowed . . .[and] continued to assess illegal escrow fees, penalties, interest and other illegal charges beyond what was allowed for in the original contract." (Compl. ¶¶ 38-39).

Plaintiffs have not presented any evidence that Saxon made material, false representations in the mortgage statements or breached the mortgage contract by charging interest rates or fees above which is authorized in the mortgage contract. In fact, all the evidence produced indicates that Saxon acted within its authority under the contract. Once the mortgage was assigned to Defendants, Saxon was within its rights under the contract to raise the interest rate, impose late fees, and require escrow payments. Mrs. Cerget admitted in her deposition that the mortgage document allowed Defendants to raise the interest rate, up to 18.5 percent. (Stacy Cerget Dep. 15, 21). Mrs. Cerget also admitted the contract allowed Saxon to assess a late charge of 5% of the overdue payment if the mortgage payment was more than 15 days late; Mrs. Cerget could not cite an example of a time that Saxon charged her more than a 5% late fee. (Stacy Cerget Dep. 32). Moreover, Mrs. Cerget acknowledged that she and her husband failed to pay their property taxes on time, thereby triggering the escrow payments. (Stacy Cerget Dep. 39). Mrs. Cerget was unable to point to any evidence that Defendants acted outside of the scope of the contract or somehow mislead her and her husband regarding the terms of the contract.

The fact that Mrs. Cerget did not read or understand the mortgage contract, (Stacy Cerget Dep. 11, 16), before she signed it does not show that Defendants materially mislead her and her husband regarding the mortgage terms. In addition, Defendants appear to have acted within their rights under the mortgage contract. For these reasons, the court grants Defendants summary judgment on Plaintiffs' fraudulent misrepresentation and breach of contract claims.

Plaintiffs' conversion claim must also be dismissed for lack of evidentiary support. In the complaint, Plaintiffs allege that "[a]s a result of the above illegal acts taken by all the named Defendants, Plaintiffs have been deprived of the property through illegal charges and the issuance

of an illegal Sheriff's Deed." (Compl. ¶ 33). As discussed, *supra*, Plaintiffs have offered no evidence that Defendants actions were illegal or contrary to the mortgage contract. Therefore, the court grants Defendants summary judgment on Plaintiffs' conversion claim.

Lastly, Defendants argue that Plaintiffs' claim that Defendants lacked standing to foreclose on Plaintiffs' home is "baseless" because the mortgage was properly assigned to Defendants. (Doc. No. 19, Defs.' MSJ 18). Plaintiffs allege that Defendants improperly foreclosed on their property because Defendants are not the original creditor "nor was the alleged assignee named in the foreclosure notice . . . ." (Compl. ¶ 46).

The Michigan foreclosure by advertisement statute, Mich. Comp. Laws § 600.3204, states, in relevant part, "[t]he party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Mich. Comp. Laws § 600.3204(1)(d). In addition, "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws § 600.3204(3).

In this case, the original creditor, Franklin Mortgage Funding assigned the mortgage to Deutsche Bank and Saxon on January 13, 2006, well before the property was foreclosed . (Doc. No. 19, Defs.' MSJ Ex. 4). Because the mortgage was assigned to Deutsche Bank and Saxon, Defendants were the proper parties to foreclose the mortgage. *See* Mich. Comp. Laws § 600.3204(1)(d). Furthermore, the foreclosure advertisement clearly names both the original creditor, Franklin Mortgage Funding, and the assignees, Deutsche Bank and Saxon: "Default has been made in the conditions of a mortgage made by James Joseph Cerget and Stacy Kyra Cerget, husband and

wife, original mortgagor(s), to Franklin Mortgage Funding, Mortgagee . . . and assigned by said Mortgagee Deutsche Bank Trust Company Americas . . . and custodian by Saxon Mortgage Services, Inc. . . ." From the mortgage assignment document and the foreclosure advertisement, it is evident that Defendants were the owners of the indebtedness and properly foreclosed on the property by advertisement. For these reasons, summary judgment is entered on Plaintiff's claim that Defendants violated Michigan's foreclosure by advertisement statute.

## IV. Conclusion

For the reasons discussed above, the court **GRANTS** Defendants' motion for summary judgment (Doc. No. 19), and dismisses Plaintiffs' complaint with prejudice. No costs to either side.

SO ORDERED.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: March 30, 2010

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 30, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan